UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
FREDERICK BURTON, individually and on
behalf of all others similarly situated,        :

        Plaintiff,                          :

    -vs-                                    :     Case No. 1:08-CV-03037-LAP

MERRILL LYNCH & CO., INC. and MERRILL           :
LYNCH, PIERCE, FENNER & SMITH
INCORPORATED,                                   :

        Defendants.                         :
------------------------------------x
RICHARD STANTON (as trustee for Ashley
Stanton), on behalf of himself and all others   :
similarly situated,

                         :

        Plaintiff,                          :

    -vs-                                    :     Case No. 1:08-CV-03054-LAP

MERRILL LYNCH & CO., INC. and MERRILL           :
LYNCH, PIERCE, FENNER & SMITH
INCORPORATED,                                   :

        Defendants.                         :
------------------------------------x

**DEFENDANTS' RESPONSE TO MOTIONS FOR (A) CONSOLIDATION OF ACTIONS; (B) APPOINTMENT OF LEAD PLAINTIFF; AND (C) APPOINTMENT OF LEAD COUNSEL**

                                  Jay B. Kasner (jkasner@skadden.com)
                                  Joanne Gaboriault (joanne.gaborialt@skadden.com)
                                  SKADDEN, ARPS, SLATE,
                                   MEAGHER & FLOM LLP
                                  Four Times Square
                                  New York, New York 10036
                                  (212) 735-3000

                                  Attorneys for Defendants Merrill Lynch & Co., Inc.
                                    and Merrill Lynch, Pierce, Fenner
                                    & Smith Incorporated

Competing motions for appointment of lead plaintiff and of counsel have been filed by Gerald Wendel and Robert Berzin (the "Wendel-Berzin Plaintiffs") and by Richard Stanton, Mark Rowlands, Lester Handler, Sheila Handler and William Borra (the "Stanton Plaintiffs"). The Wendel-Berzin Plaintiffs have also moved for consolidation of the actions filed by Frederick Burton and Richard Stanton. Defendants Merrill Lynch & Co., Inc. and Merrill Lynch, Pierce, Fenner & Smith Incorporated (collectively, "Merrill Lynch") submit this response to the motions for consolidation and appointment of lead plaintiff and lead counsel. As set forth below, Merrill Lynch supports consolidation of these actions. Although Merrill Lynch does not take a position on the competing motions for lead plaintiff and lead counsel status, it submits this response to provide the Court with pertinent information in connection with those motions.[1]

## PRELIMINARY STATEMENT

These actions were commenced on consecutive days in March by Frederick Burton and Richard Stanton. Both complaints purport to assert claims under Section 10(b) and 20(a) of the Securities Exchange Act of 1934 on behalf of all persons who purchased so called auction rate securities ("ARS") from Merrill Lynch, Pierce, Fenner & Smith Incorporated between March 25, 2003 and February 13, 2008. ARS are debt instruments issued by municipalities and student-loan lenders and preferred shares issued by closed-end mutual funds. A principal distinguishing feature of ARS is that a regular auction is held every 7 to 35 days that sets the rate of return for the next auction rate period. Because the short auction cycles provided ready liquidity, for decades ARS have been considered to be attractive alternatives to money

---

[1] While Merrill Lynch takes no position on the lead plaintiff motions, Merrill Lynch reserves all rights and arguments with respect to class certification.

market funds and other short term investments. In February 2008, the market for ARS suddenly and unexpectedly collapsed, with auctions for more than 85% of ARS failing because there were not enough buyers to purchase all the shares being offered. An auction *failure* is not a *default* that impacts either the creditworthiness or the income stream of the underlying ARS investment. In fact, as conceded in the complaints, when an auction fails, the holders of the ARS are typically compensated for the lack of liquidity by receiving an above-market penalty rate. (Stanton Compl. ¶ 29, Burton Compl. ¶ 27) Moreover, plaintiffs offer no reason to believe that the current lack of liquidity for ARS is permanent. Indeed, plaintiffs Lester Handler and Sheila Handler have already had $100,000 of their ARS redeemed. (*See* Stanton brief at 8 n.4). Similarly, on June 10, 2008, Merrill Lynch received notice that Richard Stanton will have half of his ARS redeemed by the issuer. Thus, liquidity has already begun to return for many ARS investors.

In general, plaintiffs allege that Merrill Lynch "deceptively marketed ARS as cash alternatives," and failed to disclose that the "ARS were only 'liquid' because Merrill Lynch and other broker-dealers created an artificial market for the ARS." (Stanton Compl. ¶¶ 3-4; *accord* Burton Compl. ¶¶ 2-3) Further, plaintiffs alleges that Merrill Lynch "failed to disclose that ARS are not cash alternatives to money market funds but are instead complicated financial products based on bonds having maturities of 30 years and longer." (Stanton Compl. ¶ 4; Burton Compl. ¶ 3)

Because the proposed lead plaintiffs spill such ink in their complaints attempting to argue their claims, Merrill Lynch notes that plaintiffs' assertions that terms of the securities they purchased were undisclosed is belied by the fact that detailed disclosures were made regarding these securities. Each security offered has its own individual terms and risks, so no set of disclosures are identical, and each sale transaction was unique. However, as one example of

2

the type of information available to a purchaser of ARS, the Court could look to the proposed lead plaintiff Gerald Wendel's investment in the Blackrock Muni Enhanced Fund.

The prospectus for those securities describe them as auction market preferred stock ("AMPS")[2] "that entitle their holders to receive cash dividends at an annual rate that may vary for the successive dividend periods." (Blackrock Muni Enhanced Fund Prospectus dated August 30, 2004 at 3) (the "Prospectus"). Because the securities that Wendel purchased were preferred stock, they did not have a "maturity date;" the terms upon which the preferred stock may be redeemed are set forth in the prospectus. The prospectus further discloses that the dividend rate will be set for each seven day period by an auction.

The availability of an auction every seven days provided holders of these AMPS with ready liquidity, but there was a risk that such liquidity would disappear if the auctions failed. This risk was prominently disclosed in the prospectus:

> If sufficient bids do not exist in an auction, the applicable dividend rate will be the maximum applicable dividend rate, and in such event, owners of AMPS wishing to sell will not be able to sell at all, and may not be able to sell any, AMPS in the auction. **As a result, investors may not have liquidity of investment.**

(Prospectus at 7 (emphasis added))

Plaintiffs' assertion that Merrill Lynch hid its role in supporting auctions that might otherwise fail is also belied by publicly available information. The Prospectus also provides: "A broker-dealer may bid in an auction in order to prevent what would otherwise be ... a failed auction."

In addition, since August 2006, Merrill Lynch has, under an agreement with the SEC, provided each purchaser of ARS with a written description of Merrill Lynch's auction

---

[2] AMPS are a subset of the universe of ARS that are the subject of the actions.

3

practices and procedures. That extensive 23 page disclosure, which is found on Merrill Lynch's website, includes a warning that Merrill Lynch may support an auction, but is not required to do so.

\* \* \*

On May 27, 2008, the Stanton Plaintiffs moved for appointment as lead plaintiff and selection of lead counsel. That same day, the Wendell-Berzin Plaintiffs also applied for appointment as lead plaintiff and lead counsel. Notably, plaintiff Burton, despite having commenced the first of the two actions, does not seek appointment as lead plaintiff.

## ARGUMENT

### I. THE ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES.

Merrill Lynch agrees that the *Stanton* and *Burton* cases are related actions that should be consolidated for all purposes pursuant to Rule 42(a) of the Federal Rules of Civil Procedure.

### II. MERRILL LYNCH TAKES NO POSITION ON THE MOTIONS FOR LEAD PLAINTIFF AND LEAD COUNSEL, OTHER THAN TO PROVIDE THE COURT WITH PERTINENT INFORMATION.

Courts encourage defendants to participate in the appointment process of lead plaintiffs under the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 *et seq.* (the "PSLRA"), where they have information that may be helpful to the Court. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche, Bear Wagner Specialists LLC*, 229 F.R.D. 395, 405-06 (S.D.N.Y. 2004) (concluding that defendants have standing to be heard because the process "works better with more information than less," and there was a "lack of any clear statutory language in the PSLRA precluding or limiting the right of defendants to be heard" on the issue of lead plaintiff designations); *King v. Livent, Inc.*, 36 F. Supp. 2d 187, 190

4

(S.D.N.Y. 1999) (same). Here, Merrill Lynch takes no position as to which of the proposed lead plaintiff groups should be chosen by the Court, but submits that the information below will assist the Court in making that determination.

### A. THE PROPOSED GROUPS HAVE NOT DISCLOSED ADEQUATE INFORMATION REGARDING THE CIRCUMSTANCES OF THEIR RESPECTIVE FORMATION.

Both the Stanton and Wendel-Berzin plaintiffs propose to act as a lead plaintiff "group." Neither proposed group, however, has submitted information to the Court describing the circumstances under which the respective group was formed or how they plan to coordinate their joint roles as lead plaintiffs. In order to ensure that a proposed group will be effective as lead plaintiffs, courts have frequently required that *each* group member submit a declaration or affidavit that demonstrates, among other things, that the proposed lead plaintiffs can work effectively as a group, will exercise joint decision-making, have meetings and work together in this case to actively and efficiently supervise counsel and monitor the litigation. *See, e.g., Smith v. Suprema Specialties, Inc.*, 206 F. Supp. 2d 627, 635 (D.N.J. 2002). Merrill Lynch submits that such information will aid the Court in assessing the competing claims of the two groups of plaintiffs and ensuring that plaintiffs will take an active role in the case instead of the suit being inappropriately lawyer-driven. *See Goldberger v. PXRE Group, Ltd*, No. 06-CV-3410 (KMK), 2007 U.S. Dist. LEXIS 23925, at *14 (S.D.N.Y. Mar. 30, 2007) (stating that the relationship among group members bears upon whether suit will be lawyer-driven-action eschewed by the PSLRA).

### B. THE SUBMISSIONS BY THE WENDEL-BERZIN PLAINTIFFS CONTAIN ERRORS.

Proposed lead plaintiffs Gerald Wendel and Robert Berzin ask the Court to grant them lead plaintiff status on the grounds that they allegedly hold $43 million in ARS purchased

5

from Merrill Lynch that are now subject to reduced liquidity. However, Berzin does not own any ARS purchased from Merrill Lynch.

Berzin does not bring suit on his own behalf, but on behalf of three corporations for whom he serves as an officer, Industrial Construction Corporation, Winter Park Pines, Ltd., and Colonial Bowling Lanes Inc. Berzin's attempt to bring suit on behalf of three corporate entities improperly ignores the corporate form of the owners of those securities. He cites no case law allowing a corporate officer to serve as a lead plaintiff based on securities transactions by the corporation he serves, and Merrill Lynch is aware of no such authority. Rather, under the PSLRA, the entity that suffered the alleged loss must be the movant for lead plaintiff status, not a manager of that entity. *See Bhojwani v. Pistiolis*, No. 06 Civ. 13761, 2007 U.S. Dist. LEXIS 52139, at *19-20 (S.D.N.Y. June 26, 2007).

## III. THE MOTION OF THE STANTON GROUP FOR LEAD PLAINTIFF ALSO CONTAINS ERRORS.

The Stanton plaintiffs contend that a "group" of five shareholders, Richard Stanton, Mark Rowlands, Sheila Handler and William Borra, purchased $2,241,698.98 worth of illiquid ARS. (Stanton Br. at 5) The Stanton plaintiffs can take no comfort in the errors in the Wendel-Berzin Plaintiffs motion papers because their motion is also riddled with errors.

Over half of the claimed financial interest of the Stanton Group comes from William Borra's alleged ownership of $1,216,653.18 in ARS. The chart included with his submission shows that he purportedly holds thirteen different types of ARS. He obtains a total financial interest in these securities by multiplying the "quantity" of securities by the "value" and the "rate."[3] Without commenting on the propriety of this methodology Merrill Lynch notes that

---

[3] For example, in the first security listed ("Blrk Munienhd Fnd"), he multiplied the quantity of 4 by 100 by 3.675 to obtain a total of $1,470.00. (*See* Declaration of Joseph E. Levi, Ex. B.)

no other proposed plaintiff appears to have used it. Perhaps more significantly, more than half of the total he obtains from this calculation comes from a missing decimal point in the chart. For 12 of the 13 securities, the listed "rate" set forth is roughly 2 or 3 percent. Due to a missing decimal point, the rate for the thirteenth security -- "Minnesota muni Incm" -- is listed as 2924 instead of 2.924. Because Borra multiplied quantity times value times rate, this missing decimal point created a total that is off by a factor of a thousand -- $1,169,600 should be $1,169.60.

Borra's submission has other mistakes as well. He includes securities purchased on behalf of Borra Management, LLC, in his total. As a matter of law, he cannot claim that corporation's securities as his own when seeking lead plaintiff status. *See Bhojwani*, 2007 U.S. Dist. LEXIS 52139, at *19-20. The amounts he claims to have purchased also do not match Merrill Lynch's records. A chart describing those discrepancies is attached hereto as Exhibit A.

7

## CONCLUSION

Based on the foregoing, defendants support the consolidation of the actions and take no position on the completing motions for lead plaintiff and lead counsel.

Dated: New York, New York

June 10, 2008

                    Respectfully submitted,

                    /s/ Jay B. Kasner
                    Jay B. Kasner (jkasner@skadden.com)
                    Joanne Gaboriault (joanne.gaboriault@skadden.com)
                    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                    Four Times Square
                    New York, New York 10036
                    (212) 735-3000

                    Attorneys for Defendants

## Summary of Errors in William Borra's Submission

| Name of Security | Discovered Error |
|---|---|
| Blrk Munyld Qlty Fund | No record of purchase from Merrill Lynch. |
| Putnam Managed Muni | No record of purchase from Merrill Lynch. |
| Neuberger Berman Muni | No record of purchase from Merrill Lynch. |
| Blrk Munyld Qlty Fnd | No record of purchase from Merrill Lynch. |
| DTF Tax Free | No record of purchase from Merrill Lynch. |
| Nuveen Prm Income I | Purchase amount misstated. (Mr. Borra purchased 7 shares instead of 8). |
| Putnam Muni Opprty Tr | Purchase amount misstated. (Mr. Borra purchased 4 shares instead of 10). |
| Blrk Munyld Ins Fnd | Purchase amount misstated. (Mr. Borra purchased 7 shares instead of 10). |
| Blrk Munyld Ins Fnd | Purchase amount misstated. (Mr. Borra purchased 3 shares instead of 7). |

1

CERTIFICATE OF SERVICE

The undersigned, an attorney duly admitted to practice law before this Court, hereby certifies under penalty of perjury, that on June 10, 2008, I caused a true copy of the

- ***Defendants' Response to Motions for (A) Consolidation of Actions; (B) Appointment of Lead Plaintiff; and (C) Appointment of Lead Counsel***

to be served upon the following party as indicated:

<u>By Federal Express, overnight delivery</u>

Noman E. Siegel
Stueve Siegel Hanson LLP
460 Nichols Road
Suite 200
Kansas City, MO 64112

Dated: New York, New York
       June 10, 2008

*signature*
Steven Ray Katzenstein

1