# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Frederick Burton, Individually And On Behalf of All Others Similarly Situated,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>Merrill Lynch & Co., Inc. and Merrill Lynch, Pierce, Fenner & Smith Inc.,<br><br>　　　　Defendants. | Case No. 1:08-cv-03037-LAP |
| Richard Stanton (as Trustee for Ashley Stanton), On Behalf of All Others Similarly Situated,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>Merrill Lynch & Co., Inc. and Merrill Lynch, Pierce, Fenner & Smith Inc.,<br><br>　　　　Defendants. | Case No. 1:08-cv-03054-LAP |

**RESPONSE IN SUPPORT OF THE MOTION OF GERALD WENDEL
AND ROBERT BERZIN FOR APPOINTMENT AS LEAD PLAINTIFF
AND APPROVAL OF SELECTION OF COUNSEL**

## INTRODUCTION

This class action alleges that Merrill Lynch violated the Securities Exchange Act of 1934 by deceptively marketing auction rate securities to investors as risk-free, cash-equivalent alternatives to money market funds, when they were in fact complex, long-term financial instruments. These securities became illiquid on February 13, 2008, when all major broker-dealers, including Merrill Lynch, abruptly withdrew their "support" of the auction rate securities market.

Before this Court are two motions by Class members seeking consolidation and their appointment as Lead Plaintiff and approval of their selection of counsel. In their motion for appointment, Class members Gerald Wendel and Robert Berzin (collectively, "Movants") have demonstrated a financial interest of $43,000,000 in this litigation. In their competing motion, plaintiff Richard Stanton and Class members Mark Rowlands, Lester Handler, Sheila Handler and William Bora (collectively, the "Stanton Group") submit that they have an aggregate interest of $2,141,684.18. Under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Movants have the largest financial interest and are presumed to be the "most adequate plaintiff" to represent the Class.

Based on this statutory presumption, and because Mr. Wendel and Mr. Berzin satisfy the PSLRA's typicality and adequacy requirements, they should be appointed Lead Plaintiff and their selection of counsel should be approved.

## FACTUAL BACKGROUND

As alleged in the *Burton* Complaint filed in this action, Merrill Lynch deceptively marketed auction rate securities to members of the Class. Auction rate securities are municipal bonds, corporate bonds or preferred stocks with interest rates or dividend yields that are periodically reset though auctions, typically every 7, 14, 28 or 35 days. The Complaint alleges that Merrill Lynch marketed auction rate securities as cash alternatives to money market funds when they are, in fact, complicated financial products based on instruments having maturities of 30 years or more. According to the Complaint, the auction rate securities appeared to be liquid

and stable only because Merrill Lynch and other broker-dealers were artificially supporting and manipulating the auction market. On February 13, 2008, all major broker-dealers, including Merrill Lynch, withdrew their "support" of the auction market, causing the market to collapse. As a result, Class members who had believed they were holding risk-free liquid investments became saddled with long-term securities that they are now unable to sell.

Rather than express concern for Class members to whom it sold these frozen securities as "cash equivalents," Merrill Lynch attempts, prematurely, to defend itself against liability and class certification by suggesting that it was not obligated to disclose the true liquidity risks associated with auction rate securities. Though Merrill Lynch's argument is inappropriate in the context of these motions, it warrants a brief response.

Merrill Lynch concedes that it never disclosed the risks associated with investing in auction rate securities or the manner in which it was manipulating the auction market at the time it sold those securities to its clients. Instead, Merrill Lynch argues that certain disclosures in prospectuses drafted by the securities issuers were sufficient to warn its clients. But the prospectuses did not disclose that broker-dealers systematically intervened in the auctions to ensure liquidity and manage interest rates. There is also nothing in the record to suggest that Merrill Lynch ever made those prospectuses available on a timely basis to purchasers of auction rate securities. In fact, it did not. Nor can Merrill Lynch be absolved of liability by having buried some disclosures about auction rate securities on its website. Merrill Lynch could have provided its clients with the auction disclosures that were buried on its website, but it did not.

Moreover, Merrill Lynch cannot square the statements in the prospectuses with statements in its own sales presentations and marketing materials. As recently as February 1, 2008—less than two weeks before withdrawing its "support" of the auction market—Merrill Lynch continued to promise investors that auction rate securities were fully liquid, cash-like investments with interest rates that seemed "too good to be true":

> **For cash holdings: auction market securities**
> Naturally, most investors need to keep some portion of their portfolios in liquid, cash-like instruments. We find auction market

> securities (AMS) to be a better alternative than money funds for these purposes for investors with larger amounts to invest. . .
>
> \*   \*   \*
>
> Are Closed-End Fund preferred auction rate securities safe? We consider CEF auction securities to be the conservative's conservative security.
>
> \*   \*   \*
>
> How often do closed-end fund auctions fail? Hardly ever. There was one failed auction on January 22, 2008. But that was an isolated incident that involved only a small number of shares, and the next auction from the same closed-end fund was successful. Prior to the recent episode, the last failure that involved closed end fund securities held by individual investors was in 1990.

Declaration of Aaron M. Sheanin in Support of the Motion of Gerald Wendel and Robert Berzin as Lead Plaintiff and Approval of Selection of Counsel ("Sheanin Dec."), Ex. A. At least as early as 2005, however, Merrill Lynch recognized that auction rate securities "do not qualify as cash equivalents" under applicable accounting standards, as a result of their structure and liquidity risks. *Id.*, Ex. B. Thus, after Merrill Lynch concluded that auction rate securities "do not qualify as cash," it continued to peddle the securities as "liquid, cash-like instruments."

Not surprisingly, in the wake of decisions by Merrill Lynch and all other major broker-dealers to simultaneously stop their manipulative interventions in the auction markets, state and federal regulators are now conducting several probes into the collapse of the market. Merrill Lynch has received subpoenas from the Secretary of the Commonwealth of Massachusetts and the Attorney General of the State of New York as part of their investigations into the disclosures made to investors about the safety and liquidity of auction rate securities. The Securities and Exchange Commission is also investigating Merrill Lynch's sales of auction rate securities.

## ARGUMENT

I.  **THE RELATED ACTIONS SHOULD BE CONSOLIDATED**

As described in Movants' opening papers, the *Burton* and *Stanton* actions should be consolidated for all purposes. No party objects to consolidation. The cases assert the same

3

Exchange Act claims against common defendants, arise out of the same conduct, and present common questions of law and fact. Accordingly, the Court should consolidate the *Burton* and *Stanton* actions pursuant to Rule 42(a) of the Federal Rules of Civil Procedure.

## II.     MOVANTS SHOULD BE APPOINTED LEAD PLAINTIFF

Mr. Wendel is an individual who, as trustee of the MBJR Trust, held $40,525,000 in auction rate securities he purchased from Merrill Lynch during the Class Period. Through three closely-held companies, Mr. Berzin held $2,475,000 in auction rate securities purchased from Merrill Lynch during the Class Period.[1] Movants respectfully submit that they should be appointed Lead Plaintiff because they have demonstrated the largest financial interest in this litigation and otherwise meet the requirements of the PSLRA and Federal Rule of Civil Procedure 23.

### A.     The Procedure Required By the PSLRA

Under the PSLRA, the Court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). "A party is entitled to the statutory presumption of being the most adequate plaintiff if it can show that it: (aa) filed an initial complaint or timely moved for appointment as lead plaintiff; (bb) has the largest financial interest in the relief sought by the class; and (cc) satisfies the typicality and adequacy requirements of Rule 23 of the Federal Rules of Civil Procedure." *Strougo v. Brantley Capital Corp.*, 243 F.R.D. 100, 104 (S.D.N.Y. 2007) (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)). The presumption that a party is the most adequate plaintiff may be rebutted only upon proof that the party "will not fairly and adequately protect the interests of the class" or "is subject to unique

---

[1] As alleged in the *Burton* Complaint, the Class consists of all persons and entities that purchased auction rate securities from Merrill Lynch between March 25, 2003 and February 13, 2008, inclusive, and continued to hold such auction rate securities as of February 13, 2008, the date that the auction market collapsed. *See* Complaint, ¶ 12.

4

defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

### B. Movants Are Entitled To The Statutory Presumption Of Being The Most Adequate Plaintiff

#### 1. Movants Have Complied With the PSLRA

As described in Movants' initial brief, the notice of the filing of the initial action was published on March 25, 2008. Mr. Wendel and Mr. Berzon moved for appointment on May 27, 2008. Their motion is thus timely made. *See* 15 U.S.C. § 78u-4(a)(3)(A) and (B); Fed. R. Civ. P. 6(a).

#### 2. Movants Have The Largest Financial Interest In The Relief Sought By The Class

Pursuant to the PSLRA, identification of the most adequate plaintiff "begins with the identification of the movant with 'the largest financial interest in the relief sought by the class.'" *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001) (*quoting* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb)). "In other words, the district court must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit." *In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002).

Among the prospective Lead Plaintiffs, Movants have the largest financial interest in the relief sought by the Class. As described in their initial moving papers, Mr. Wendel and Mr. Berzin have a cumulative financial interest of $43,000,000 — the combined par value of illiquid auction rate securities they purchased from Merrill Lynch during the Class Period that have not been redeemed after the Class Period.[2] *See* Declaration of Jonathan K. Levine In Support of the Motion of Gerald Wendel and Robert Berzin for Appointment as Lead Plaintiff and Approval of Selection of Counsel ("Levine Dec."), Exs. B, C.

---

[2] Although some issuers have announced plans for partial redemptions of certain auction rate securities held by Mr. Wendel and Mr. Berzin, as of this filing, no such redemptions have occurred. Under a best case scenario, for example, even after these partial redemptions, approximately $35,000,000 of Mr. Wendel's auction rate securities will remain illiquid.

5

In contrast, the Stanton Group submits that its aggregate financial interest is $2,141,684.18.[3] *See* Memorandum of Law in Support of the Stanton Group's Motion for (1) Appointment as Lead Plaintiff and (2) Approval of Their Selection of Lead Counsel, pp.5-6. Movants have more than twenty times the amount at stake in this litigation than the Stanton Group.

Both sets of Lead Plaintiff movants have aggregated their financial interests in this litigation. As discussed in Mr. Wendel's and Mr. Berzin's moving papers, aggregation is proper. *See* 15 U.S.C. § 78u-4(a)(3)(B)(i) (providing that a court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members . . . ."); 15 U.S.C. § 78u-4(a)(3)(B)(iii) (a "person or group of persons" may be an adequate lead plaintiff); *See In re Centerline Holding Co. Sec. Litig.*, 2008 U.S. Dist. LEXIS 36406, *10 (S.D.N.Y. May 5, 2008) ("Groups of unrelated investors are acceptable if they otherwise meet the requirements of the PSLRA."); *Weltz v. Lee,* 199 F.R.D. 129, 133 (S.D.N.Y. 2001) ("[A]ppointing a group of people as co-lead plaintiffs is allowable under the PSLRA."). Notably, as all movants here are individual investors, aggregation would not displace any institutional candidate for Lead Plaintiff. *See In re Centerline Holding*, 2008 U.S. Dist. LEXIS 36406, *8. Movants are aware of their responsibilities to monitor the litigation, supervise counsel and represent the interests of the Class. They intend to work jointly to prosecute the litigation. *See* Sheanin Dec., Exs. C, ¶ 3; Ex. D, ¶ 4. Accordingly, aggregation of their claims is appropriate.

Even if aggregation is not permitted in this case, however, the individual financial interest of Mr. Wendel alone far exceeds that of all other Lead Plaintiff applicants. Mr. Wendel's individual financial interest amounts to $40,525,000. *See* Levine Dec., Exs. B, G. As

---

[3] Merrill Lynch has raised questions as to the Stanton Group's calculation of its financial interest, and has advised the Court that at least some, if not all, of the Stanton Group's investments have been redeemed. Regardless of the accuracy of this assertion, the Court need not resolve this issue for purposes of this motion, as Movants' cumulative financial interest (as well as Mr. Wendel's alone) far exceeds the financial interest of the Stanton Group.

6

described in his certification and declaration, Mr. Wendel is willing to serve as Lead Plaintiff individually or as a member of a group. *See* Levine Dec., Ex. B, ¶ 3; Sheanin Dec., Ex. C, ¶ 3. If the Court is concerned about aggregation, it may appoint Mr. Wendel alone. *See Weltz*, 199 F.R.D. at 133 n.4 (noting court's authority to modify class members' lead plaintiff motions *sua sponte*); *Yousefi v. Lockheed Martin Corp.*, 70 F. Supp. 2d 1061, 1070 (C.D. Cal. 1999); *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42 (S.D.N.Y. 1998).

### 3. Movants Otherwise Satisfy Rule 23

For the purposes of a lead plaintiff motion, only the typicality and adequacy prongs of Rule 23 are relevant. *See In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 436 (S.D.N.Y. 2008) ("[T]he moving plaintiff must make only a preliminary showing that the adequacy and typicality requirements under Rule 23 have been met." (quotations omitted)); *Albert Fadem Trust v. Citigroup, Inc.,* 239 F. Supp. 2d 344, 347 (S.D.N.Y. 2002) ("Typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA."). Movants satisfy the typicality and adequacy requirements of Rule 23.

As discussed in their previously filed brief, Movants are typical in that their claims and the claims of all other Class members arise out of their purchases of auction rate securities from Merrill Lynch during the Class Period as a result of Merrill Lynch's materially false and misleading statements and omissions about the liquidity and risk characteristics of those securities and the auction market. Movants are adequate to represent the Class because their interests are aligned with those of other Class members, and there is no evidence of any antagonism between their interests. In addition, Movants have selected competent and experienced counsel to prosecute the claims in this case and to serve the interests of the Class.

Merrill Lynch's criticism that Mr. Berzin does not have standing to pursue claims on behalf of three of his closely-held companies lacks merit. Merrill Lynch cites to the report and recommendation of Magistrate Judge Fox in *Bhojwani v. Pistiolis*, No. 06 Civ. 13761, 2007 U.S. Dist. LEXIS 52139, at *19-20 (S.D.N.Y. June 26, 2007), for the proposition that a class member

may not move for appointment as lead plaintiff on behalf of his family members and family businesses which invested in the securities at issue, but were not themselves movants. District Court Judge McMahon subsequently rejected Magistrate Judge Fox's recommendation and appointed movant lead plaintiff, however. Magistrate Judge Fox had refused to credit the affidavits submitted by members of the movant's family to demonstrate that movant had authority to seek appointment as lead plaintiff on their behalf. *Id.* at *18-19. Judge McMahon held Magistrate Judge Fox's decision to be "clear error," noting that the "record reveals that [movant] Mr. DeShayes made all investment decisions relating to Top Tankers on behalf of all the members of his family, including his son's business, and that he had unrestricted decision-making authority over all of the DeShayes Family Accounts." *Bhojwani v. Pistiolis*, No. 06-13761, slip op. at 3 (S.D.N.Y. July 31, 2007) (submitted herewith as Ex. E to Sheanin Dec.). Judge McMahon found the movant to be an appropriate lead plaintiff. *Id.*

Mr. Berzin has the authority to seek appointment as Lead Plaintiff and pursue these claims on behalf of his three companies. As described in his declaration submitted herewith, Mr. Berzin is the President and sole shareholder and owner of Industrial Construction Corp., which is the General Partner of Winter Park Pines, Ltd. *See* Sheanin Dec., Ex. D, ¶ 3. He is also the President and sole director of Colonial Bowling Lanes, Inc. *See id.* Those three companies purchased auction rate securities from Merrill Lynch, as identified in Mr. Berzin's certification. *See id.* ¶ 2. Mr. Berzin has full authority to act on behalf of all three companies, including the authority to make investment decisions and to bring or participate in a lawsuit under the federal securities laws. *See id.*, ¶ 3. Accordingly, he has standing to assert these claims and seek appointment as Lead Plaintiff.

In sum, Mr. Wendel and Mr. Berzin satisfy the requirements for appointment as Lead Plaintiff, and they are therefore the presumptive "most adequate plaintiff" under the PSLRA. The Stanton Group has not submitted proof to rebut that presumption. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii) (the most adequate plaintiff presumption "may be rebutted only upon *proof by a member of the purported plaintiff class*" that the most adequate plaintiff "will not fairly and

8

adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of representing the class") (emphasis added).

### III. MOVANTS' CHOICE OF COUNSEL SHOULD BE APPROVED

Movants have selected three law firms to represent the Class in this matter, subject to Court approval: Girard Gibbs LLP as Lead Counsel, Stueve Siegel Hanson LLP as Co-Lead Counsel, and Seeger Weiss LLP as Liaison Counsel. As shown in the firm resumes filed with Movants' initial moving papers, all three firms have extensive experience in complex class actions and securities litigation on behalf of investors. These firms filed the first auction rate securities class action against Merrill Lynch (the *Burton* action), and they have been instrumental in investigating this matter since the collapse of the auction rate securities market on February 13, 2008. Accordingly, Movants' selection of counsel should be approved.

### CONCLUSION

For the foregoing reasons and those stated in their moving papers, Mr. Wendel and Mr. Berzin respectfully request that this Court: (1) consolidated the *Burton* and *Stanton* actions for all purposes; (2) appoint Mr. Wendel and Mr. Berzin Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(i); and (3) approve their selection of counsel pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).

DATED: June 13, 2008

Respectfully submitted,

**GIRARD GIBBS LLP**

By: *Jonathan K. Levine*
    Jonathan K. Levine (JL-8390)

Daniel C. Girard
Aaron M. Sheanin
601 California Street, 14th Floor
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846

**Proposed Lead Counsel**

9

        Norman E. Siegel
        **STUEVE SIEGEL HANSON LLP**
        460 Nichols Road, Suite 200
        Kansas City, MO, 64112
        Telephone: (816) 714-7100
        Facsimile: (816) 714-7101

        **Proposed Co-Lead Counsel**

        Christopher A. Seeger (CS-4880)
        Stephen A. Weiss (SW-3520)
        David R. Buchanan (DB-6368)
        **SEEGER WEISS LLP**
        One William Street, 10th Floor
        New York, NY  10004
        Telephone:  (212) 584-0700
        Facsimile:  (212) 584-0799

        **Proposed Liaison Counsel**

## CERTIFICATE OF SERVICE

I, Jonathan K. Levine, hereby certify that on June 13, 2008, I caused the following document(s) to be filed electronically with the United States District Court for the Southern District of New York through the Court's mandated ECF service:

1. **RESPONSE IN SUPPORT OF THE MOTION OF GERALD WENDEL AND ROBERT BERZIN FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL**

Counsel of record are required by the Court to be registered e-filers, and as such are automatically e-served with a copy of the document(s) upon confirmation of e-filing.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 13th day of June, 2008 at San Francisco, California.

                                        */S/ Jonathan K. Levine*